This is a recording of the meeting of the INVISTA S.a.r.l. Corporation North America v. INVISTA S.a.r.l. Okay, the next argued case is number 17-1890, BP Corporation North America v. INVISTA S.a.r.l. Mr. Carpenter. Good morning, your honors, and may it please the court. This court should reverse, or at a minimum vacate, the board's decision on rehearing because the board made three errors in rendering its decision. First, the board did not make a prima facie case of obviousness. Second, the board did not apply the correct legal standard for teaching away. And third, the board raised a new ground of rejection. The court should also reverse, or at a minimum vacate, the board's decision because the board's finding that Tomitaka does not teach away from the claimant invention is not supported by substantial evidence. I will begin by discussing the board's failure to make a prima facie case of obviousness. The board correctly states in its original... Mr. Carpenter, it sure looks like you take Tomitaka and add Broca's recycling would seem to be a fairly obvious thing to do. Well, your honor, two points. We think the board didn't provide a motivation to combine. In fact, they withdrew very key findings. Isn't the motivation to improve a process and avoid a purification step? That's true, your honor, but as we've mentioned, Tomitaka teaches away from this combination. Tomitaka states that it identifies the problem in the prior art that recycling these impurities to the column will have the tendency to clog the column. It then goes on to say it's an objective of the invention, Tomitaka's invention, to address that clogging. And then finally, it provides the only solution that it provides to meet that objective is to remove the impurities before they make them to the column. It's entirely opposite of what Broca does. It's entirely opposite of what the claimed invention does. As I was saying about the prima facie case, the board made two very key findings in its original decision on appeal. First, it found that Broca teaches a non-preferred embodiment which doesn't have a catalytic oxidation unit. Next, the board found that Tomitaka teaches that condensate recycle can remove clogging due to aromatic oxalic acids in the column. And yet both of these findings were withdrawn by the board in its decision on rehearing. These withdrawn findings were fundamental to the board's motivation to combine the references. The teaching regarding Tomitaka was the board's primary rationale for the motivation for combining Tomitaka and Broca. This rationale is reproduced on page 17 of the blue brief. Notably, the board's rationale states that the combination is, quote, based on this now-withdrawn teaching. The finding regarding the non-preferred embodiment of Broca was used by the board to find our expert testimony insufficient and to support the contention that non-preferred embodiments can be used to show obviousness. The board's new key finding in its decision on rehearing, that recycling of impurities to the column is taught by unnamed prior art, quote, unnamed prior art is improper. By failing to name the prior art, the Graham v. John Deere inquiry into the scope and content of the prior art was not and cannot be performed. Had the board cited the text in column 20 of Tomitaka about by recycling the condensates from the condensers 56A and 56B to the distillation column 53, stuffing or clogging of the distillation column 53 is prevented? Had they cited that? Would you still have your teaching away argument today? Okay, so you're talking about the paragraph 82? Yes. Yes, okay. At the bottom of paragraph 82. Yes, the teaching away argument would be identical to the one that we had because it is not paragraph 82. It's not the equipment or the, sorry, the scheme in paragraph 82 that's removing the impurities from the column. It's the equipment in paragraph 77, which we've been discussing the entire time. So embodiment two of Tomitaka requires the equipment in paragraph 77 to remove the impurities before it gets to the column. So whatever is happening in paragraph 82, whatever that condensate is removing from. Well, does this language, I understand what you're saying, but does this language to one of ordinary's filmy art? Is it possible that this language would at least suggest that there's things that could be done so that you could send the mother liquor directly without having it undergo any further processing? I think the language makes it clear that it's certainly not sufficient to remove it just with this condensate reflux. Obviously, it must be removing something because it says it's preventing the column from clogging. We don't think it's from the impurities. The impurities are just not there. The impurities have all been removed according to the, according to paragraph 77. It says, paragraph 77 says, extract off the remaining and precipitated impurities, which would indicate that they've all been removed. I noticed the prosecution of your application. A number of references were listed. One of them is Tomitaka. Is that the U.S. version of the European application? That's correct, Your Honor. But your own, Broker, Broker's your own reference. That wasn't cited. It certainly is close. No specific question. It's just an observation. Okay. I don't recall if Abrams was cited, but Abrams is very close to Broker, so it might be a cumulative reference. Okay. So at a minimum, the court should vacate. Oh, okay. I'd also like to address paragraph 82. This court should not consider the teachings of paragraph 82 because they were not relied on by the examiner or the board. As we cited in our gray brief, the case Vady and Nathan has analogous facts. The court in Vady and Nathan decided to consider a portion of the cited reference that wasn't considered by the board. So our view is that you should not be considering paragraph 82. We've talked about the teaching away already. I'd like to talk about how the board applied the wrong legal standard in its teaching away analysis. While the board found that Tomitaka taught a tendency to clog the column and nonetheless held that Tomitaka did not teach away because it did not teach that clogging would occur necessarily, immediately, and with certainty, such high standard is well beyond the legal standard expressed in this court's precedent in the Pew Spine where reference teaches away where it merely expresses concern for failure of a proposed combination. Other court precedents have consistently stated that a finding of teaching away is appropriate where the reference criticized, discredited, or otherwise discouraged the invention. Is it possible that what the board was saying, or maybe the way I'm reading it, is that they're saying it suggests that there could be a problem, or may tend to be a problem, but then it even has other embodiments within the patent itself where it says that this would not have the problem of clogging. And so recognizing that it's a problem in some circumstances, but maybe not in all circumstances. You don't think that's a fair reading of the board's opinion? I don't think that's a fair read of Tomitaka. But that's a factual question. I was asking you, is that a fair reading of what the board determined? Oh, I'm sorry. I mean, teaching away is a factual question, right? Teaching away is a factual question. It's a factual question, so we review it for substantial evidence. And then I think your secondary argument is that they applied the wrong law, but I was saying, isn't it possible that they're looking at it and they're saying, this is not just a criticism of, you know, that there could be a problem with clogging or stuff. So recognizing that there could be a problem, but it says may, and then it has other parts in the description where it's talking about the reference. Tomitaka is talking about how these are circumstances where there wouldn't be clogging. Well, we believe the board is incorrect about that there's other circumstances where it says there's no clogging. There's no embodiment in Tomitaka that has recycled mother liquor to the column. There's only one, figure two. And that one removes the impurities. So it's unequivocal that impurities are being, that the solution to the problem is always there in every circumstance. It looks like I didn't answer your question. No, it's okay. I think you've answered it, and that's fine. Do you want to continue your argument about how they applied the wrong law in the teaching away? Right. So I see my time is running out. I'm just going to briefly talk about the new ground of rejection. In its decision on rehearing, the board for the first time relied on unnamed prior art for providing teaching about recycling mother liquor. This constitutes a new ground of rejection. Furthermore, the board no longer relied on broker for teaching recycling impurities to the column, but instead relied on this unnamed prior art or Tomitaka. Based on this new teaching, the board found the claims obvious, quote, even without broker. This is entirely a new ground of rejection that we have not had opportunity to respond to, nor could we, given that we don't even know the identity of the prior art. The court should remand for the board to address this new ground of rejection. Thank you. Thank you. Ms. Huffman. May it please the court? Your Honors, I will start with teaching away, and as Your Honor noted, it is a factual question that the board set out significant factual findings to provide substantial support for. In fact, the board looked at the language itself in Tomitaka, which is the language that says recycling may tend to clog, or may tend to suffer from clogging. And made factual findings about that in light of the rest of the teachings of Tomitaka that would not render the column inoperable, is the language that the board used, which has been cited before in this case. But the factual finding that it wouldn't render the distillation column inoperable, along with the lack of evidence that this potential for clogging would immediately make the distillation column not work, or have some kind of import on the distillation column, frankly at all, to make it a person of skill in the art not want to do it. Those factual findings all led the board to decide that, along with actually in Vista's declarant, McCartney at paragraph 10 and 9, where he was saying person of skill in the art would be motivated to recycle the mother liquor. And that comes from the teachings of Broker, specifically articulating why you would want to recycle the mother liquor, including getting rid of a waste stream, being able to take intermediates and send them back into the oxidation tank to potentially convert them into finished products. If there's any finished product that wasn't recovered, sending it back to the oxidation. So there are all kinds of articulated benefits in Broker itself as to why you would want to send the mother liquor back directly without purifying it. So in light of all of those factual findings, on top of the fact that there was no suggestion that the distillation column was going to be inoperable, and the language may promote some clogging, the board had sufficient factual evidence to base its opinion that there would be no teaching away. Unless the court has any questions on the teaching away point, I would like to go to what's been articulated as the prima facie case of obviousness. And your honors, there is substantial evidence in this record to show that Tomitaka had all of the steps of this process of making aromatic carboxylic acids, except the sending the mother liquor directly. And that teaching was expressly found, as the examiner found and the board found in Broker, with a motivation as to why you want to do that, as I just articulated. And the only argument that came up is this language in Tomitaka that sending the mother liquor back may cause some clogging. And the board looked at and considered the declarations of patent owner, Dr. Bartros and Dr. Lee. What about the fact that the board, I think I recall that they looked at paragraph 60, is that right? Yes, your honor. The board looked at paragraph 60 and then later retracted its reliance on paragraph 60. So what do we do with that? So your honor, I do not think that this court even needs to look at paragraph 60 and the teachings of that it's truly the condensate and sending the condensate back to the column to flush out the crystals. That was the finding that related to paragraph 60. I don't think the court even needs to go there to find that there was substantial evidence to have a motivation to combine these two teachings and that the clogging would not dissuade a person of skill in the art to do it. But I also think that this court is well within its ability to look at paragraph 82 and 43. What about under cases like evasive? Are we able really to look at things that the board did not consider in a reference? So your honor, I think in this case, and it's the progeny I think from Chenery, that the reviewing court shouldn't look at new grounds that weren't discussed in the agency decision. And I think that we're very far in this case from that situation because we're talking about the same prior art reference, Tomitaka. We're talking about nearly identical words in the reference. It's just the difference in pin sites. And we're talking about the same argument. The same argument that the Tomitaka solution to this potential clogging problem was sending the condensate water back into the distillation to flush out the carboxylic acid crystals. And that is important. The teaching in Tomitaka says the clogging is due to these crystals. And as the board found, I think looking at all the evidence of the record, that the catalytic oxidation unit, which is what patent owner said person of skill would need, there's no connection between what that was doing and the crystals filled up in the distillation column. The court has no further questions. Any more questions? Thank you. Thank you, your honor. Mr. Carpenter. Thank you. Just one point I'd like to address. Counsel mentioned that paragraph 82 is the same fact pattern essentially as paragraph 60. It's just not true. They're different. They reference different embodiments. Paragraph 60 references an embodiment that the recycle doesn't even go to the column. So it's totally irrelevant to the second embodiment, which is what paragraph 82 refers to. But paragraph 82 has to be read in combination with paragraph 77. Paragraph 82 is not what is removing the aromatic carboxylic acid crystals from the column. It's the equipment that's talked about in paragraph 77, the cooler, the separator, and the PX perazolene extraction unit. Thank you. Thank you. Thank you both. The case is taken under submission.